IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**MECHELLE POPPELREITER AND**
**ROBERT ANDREW POPPELREITER**                                       **PLAINTIFFS**

**V.**                                        **NO. 1:11CV008-A-S**

**GMAC MORTGAGE, LLC**                                                     **DEFENDANT**

## MEMORANDUM OPINION

Before the Court is Defendant GMAC Mortgage, LLC's Motion to Dismiss [8] Plaintiffs' claims for negligence, gross negligence, negligent misrepresentation, and fraud pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted in part and denied in part.

## FACTS

The case centers around an attempt by Plaintiffs Mechelle and Andrew Poppelreiter's unsuccessful attempts to obtain a modification of their residential mortgage loan. The Complaint alleges the following: In March of 2009, Plaintiffs began experiencing financial difficulties and were unable to make mortgage payments for the months of March and April. On May 11, 2009, Plaintiffs made the payment due for March 2009. On July 1, 2009, Mechelle informed a representative of GMAC (who serviced the Plaintiffs' mortgage) that she was going to wire a payment of $3000.00 to cover the April and May payments.

The GMAC customer service representative told Mechelle that she likely qualified for a mortgage modification, and took financial information from Mechelle over the phone. At the conclusion of this interview, the GMAC representative told Mechelle that she did in fact qualify for a modification. The representative instructed Mechelle not to send the $3000.00 she had offered,

but instead to send a single monthly payment in the amount of $1485.00 and to make no further payments until August 1, 2009. According to the GMAC representative, the Poppelreiters would be in a "trial modification" for the months of August through November, 2009, and were to make a payment in each of those months in the amount of $1148.00. The Poppelreiters provided GMAC with all documentation requested and made the reduced payments in August, September, and October of 2009.

In November of 2009, Mechelle was about to wire her monthly payment to GMAC but discovered she had lost $40.00. She again spoke with a GMAC customer service representative, who told her not to worry about the missing $40.00, but to instead make a payment in the amount of $1100.00 and to continue making monthly payments in that amount until her permanent modification took effect, which the customer service representative said would occur before December 31, 2009. The GMAC representative also requested that the Poppelreiters resend their financial information, and Mechelle did so.

The Poppelreiters sent their $1100.00 December payment, but still heard nothing from GMAC regarding the terms of their permanent modification. At the end of December 2009, Mechelle called GMAC to inquire as to the status of the modification. The GMAC representative told her that the Poppelreiter's modification was still "in processing." The Poppelreiters continued making payments for January and February 2010. Sometime in February, GMAC informed Mechelle that her permanent modification had been denied due to the cash value of her life insurance policy. After informing GMAC that she did not have any life insurance with a cash value, the GMAC representative stated that her denial was "probably a mistake" and asked Mechelle to submit another modification application. Mechelle did so.

Soon after the above-described conversation, Mechelle called HOPE, the federal agency charged with assisting homeowners with the Home Affordable Modification Program ("HAMP"). The HOPE representative, Mechelle, and a GMAC representative engaged in an extensive three-way call, during which time they established that the Poppelreiters qualified for a HAMP modification and the denial of the Poppelreiter's modification application had been in error. During this conversation, the HOPE representative asked the GMAC representative to identify the owner of the Poppelreiter's mortgage. The GMAC representative refused to do so.

Mechelle made the March 2010 payment of $1100.00, but in April resumed making payments in the amount of $1465.00, because she was concerned that she had not heard from GMAC regarding the terms of Plaintiff's permanent modification.

In May 2010, the Poppelreiters received a loan modification agreement from GMAC. However, the Complaint alleges that the agreement was not a HAMP modification, nor did it lower their payment amount. On the same day, the Poppelreiters also received a letter threatening foreclosure. Mechelle again spoke with a GMAC representative, who "agreed that the proposal sent to the Plaintiffs did not constitute a modification of the Plaintiffs' loan," and confirmed again that the Poppelreiters qualified for a HAMP modification. The GMAC representative asked that Mechelle provide additional documentation, and Mechelle complied.

Later in May, Mechelle and a HOPE representative spoke with a GMAC employee named Arthur, who informed them that he could not determine what was happening with the Poppelreiter's loan or the modification application. He stated that the Poppelreiter's qualified for a HAMP modification and it appeared someone at GMAC was making mistakes in calculating the Poppelreiter's income. Arthur requested that Mechelle send another application directly to him, and

3

Mechelle did so.

In June 2010, GMAC sent the Poppelreiters another letter indicating that GMAC was preparing to foreclose on their residence. The next week, GMAC sent the Poppelreiters another modification offer. The offer was not a HAMP modification and did not reduce the Plaintiffs' monthly mortgage payments. In August 2010, the Poppelreiters received a notice of default from GMAC alleging them to be more than $10,000 behind on their mortgage and threatening foreclosure if such amounts were not immediately paid.

The Complaint alleges that "as of September 1, 2010, GMAC has failed to take any steps to remedy its obvious accounting errors or to provide Plaintiffs with the HAMP modification for which GMAC has repeatedly confirmed them to be qualified." The Poppelreiters filed this suit in the County Court of Lee County, Mississippi, alleging negligence, gross negligence, negligent misrepresentation, and fraud. GMAC timely removed the action to this Court.

## 12(B)(6) STANDARD

"The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed to be true and are viewed in the light most favorable to the plaintiff." Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter, 607 F.3d 1029, 1032 (5th Cir. 2010) (citing In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sullivan v. Leor Energy LLC, 600 F.3d

542, 546 (5th Cir. 2010). While a plaintiff's complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." Id. (quoting Bell Atl Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)) (punctuation omitted). There is no formulaic approach to determining whether a plaintiff has stated a plausible claim for relief. Rather, it is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

## DISCUSSION

In response to GMAC's initial argument that HAMP does not provide a private cause of action or obligate GMAC to provide a modification, Plaintiffs concede the "Poppelreiters have not alleged that they were entitled to a HAMP modification nor do they seek to have the court force the Defendant to provide them one. . . . [This] is a simple negligence and misrepresentation action that must survive or fail based on Mississippi laws applicable to those claims." Therefore, the Court will examine whether the Plaintiffs have stated a claim for negligence, negligent misrepresentation, or intentional misrepresentation under Mississippi state law.

**A. Negligence**

To prevail in any type of negligence action, a plaintiff must show (1) the existence of a duty to conform to a specific standard for the protection of others against the unreasonable risk of injury; (2) a breach of that duty; (3) causal relationship between the breach and alleged injury; and (4) injury or damages. Laurel Yamaha, Inc. v. Freeman, 956 So. 2d 897, 904 (Miss. 2007) (citations omitted). GMAC disputes that it owed Plaintiffs any duty beyond its contractual obligations, or alternatively, even if it owed the Plaintiffs an extra-contractual duty, the Plaintiffs have failed to allege that it

5

breached the duty, and finally, even if duty and breach have been alleged, the Plaintiffs have made only conclusory allegations that they have suffered an injury.

The first obligation of a plaintiff in any negligence case is to first prove the existence of a duty. Enterprise Leasing Co. v. Bardin, 8 So. 3d 866, 868 (citing Laurel Yamaha, Inc. v. Freeman, 956 So. 2d 897, 904 (Miss. 2007)). Whether a duty exists in a negligence case is a question of law to be determined by the Court. Id. (citing Brown v. J.J. Ferguson Sand & Gravel Co., 858 So. 2d 129, 131 (Miss. 2003)). Under Mississippi law, "[a] contract creates a reasonable duty of care in fulfilling one's contractual obligations." River Prod. Co., Inc. v. Baker Hughes Prod. Tools, Inc., 98 F.3d 857, 859 (5th Cir. 1996) (citing McKinnon v. Batte, 485 So. 2d 295, 298 (Miss. 1986)). Regarding mortgages, the Mississippi Supreme Court has stated that mortgagees and mortgagors "are in a relationship of trust and the mortgagee should not be allowed to abuse that relationship." American Nat. Bank of Iuka v. Mitchell, 359 So. 2d 1376, 1380 (Miss. 1978), *overruled on other grounds by* C & C Trucking Co. v. Smith, 612 So. 2d 1092 (Miss. 1992). Moreover, mortgagees "at least" owe their mortgagors a "duty of fairness." Id.[1]

Plaintiffs' complaint alleges that "GMAC has been negligent and careless in the manner in which it performed its duties in servicing Plaintiffs' loan . . . ." The complaint further alleges that GMAC has, among other things, failed to use reasonable care in the modification process it offered, initiated and managed, instructed the plaintiffs to withhold mortgage payments as a prerequisite to

---

[1] However, under Mississippi law, "[d]uties to disclose or to act affirmatively . . . do not arise in arms length transactions or under an ordinary standard of care. Rather, they arise only in fiduciary or confidential relationships." MS Credit Ctr., Inc. v. Horton, 926 So. 2d 167, 177 (Miss. 2006) (citing Van Zandt v. Van Zandt, 86 So. 2d 466 (1956)). A relationship between a mortgagor and mortgagee is not a fiduciary one as a matter of law, but rather "an arms-length business transaction involving a normal debtor-creditor relationship." Merchants & Planters Bank of Raymond v. Williamson, 691 So. 2d 398, 403 (Miss. 1997).

a loan modification, wrongfully added thousands of dollars of arrearages to Plaintiffs' account, failed to correct bookkeeping errors related to the trial modification it offered the Plaintiffs, and threatened foreclosure proceedings against Plaintiffs' residence based on arrearages that, "if they exist at all, are the result of Plainitffs' adherence to directives given Plaintiffs by GMAC's own employees," and requests an award of actual damages.[2]

Plaintiffs allege that Defendant breached the duties it owed to them and as a result of the breach they were damaged. Viewing the Complaint in the light most favorable to the Plaintiffs, the Court finds that they have at least alleged a plausible claim for negligence. Defendant's motion to dismiss is denied as to this claim.

**B.  Intentional Misrepresentation**

Plaintiffs allege that Defendant engaged in fraud. The elements of a fraudulent or intentional misrepresentation are: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. Trim v. Trim, 33 So. 3d 471, 478 (Miss. 2010) (citing McCord v. Healthcare Recoveries, Inc., 960 So. 2d 399, 406 (Miss. 2007)). In addition to the facts described above, the Complaint alleges:

> 41.  GMAC falsely represented to Plaintiffs that their loan had been approved for a modification and that they should not make any payments between the date of the first conversation described herein and August 1, 2010. GMAC also

---

[2]The Defendant argue that these allegations of damages are conclusory. However, to withstand a 12(b)(6) motion, the Rules of Civil Procedure "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. The Court finds Plaintiffs have met this burden with respect to damages.

falsely represented to Plaintiffs that, if they made payments in the amount identified by GMAC each month, they would not be penalized for doing so; GMAC also falsely represented to Plaintiffs that they are more than $10,000.00 in arrears on their mortgage.
42. GMAC knew, or should have known, that these representations were false.
43. Plaintiffs justifiably relied on the misrepresentations of GMAC, and have conducted themselves accordingly and to their detriment
44. The Plaintiffs have suffered personal and financial damage as a result of GMAC's misrepresentations
45. As of a result of its intentional misrepresentation, GMAC is liable to Plaintiffs for actual and punitive damages

Defendant assert that Plaintiffs have failed to plead their fraud claim with particularity as required by Federal Rule of Civil Procedure 9(b). The Court agrees. Rule 9(b) requires a party alleging fraud to "state with particularity" the circumstances constituting the alleged fraud. FED. R. CIV. P. 9(b); see also MISS. R. CIV. P. 9(b) (same). Fifth Circuit precedent "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" Flaherty & Crumrine Preferred Income Fund, Inc., 565 F.3d 200, 206 (5th Cir. 2009) (citations omitted); see also Tel-Phonic Services, Inc. v. TBS Intern, Inc., 975 F.2d 1134, 1138-39 (5th Cir. 1992) ("At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir.2003). However, "[w]hat constitutes 'particularity' will necessarily differ with the facts of each case." Guidry v. Bank of LaPlace, 954 F.2d 278, 288 (5th Cir. 1992).

Plaintiffs' complaint fails to plead fraud with the particularity required by Rule 9(b). The Complaint fails to, at minimum, explain why the above statements are fraudulent. Additionally, the

Complaint wholly fails to specify the "who, what, when, and where" regarding the alleged misrepresentation that Plaintiffs would not be penalized for making payments in the amount specified by GMAC each month. Therefore, the Court grants Defendant's motion to dismiss as to Plaintiffs' claim for intentional misrepresentation; however, such dismissal shall be without prejudice. See Hart v. Bayer Corp., 199 F.3d 239, 247 n.6 (5th Cir. 2000) ("[A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibility result in dismissal of the complaint with prejudice to re-filing. Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."). If Plaintiffs desire to re-plead their intentional misrepresentation claims to satisfy the particularity requirements of Rule 9(b), they may seek leave of court to do so.

C.   **Negligent Misrepresenation**

Defendants next argue that Plaintiffs have failed to properly state a claim for negligent misrepresentation. In order to establish a claim for negligent misrepresentation, a plaintiff must prove the following elements: (1) a misrepresentation or omission of a fact, (2) that the representation or omission is material or significant, (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities, (4) that the plaintiff reasonably relied upon the misrepresentation or omission, and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance. Mladineo v. Schmidt, 52 So. 3d 1154, 1164-65 (Miss. 2010) (citing Hazlehurst Lumber Co., Inc. v. Miss. Forestry Comm'n, 983 So. 2d 309, 313 (Miss. 2008)). Plaintiffs base their negligent misrepresentation claims on the same statements as their fraud claims.

9

1. Reasonable Reliance

Defendant first argues that, "[t]o the extent Plaintiffs' misrepresentation claims are based on an alleged statement from GMAC that Plaintiffs should make no payments from March 2009 until August 2010 . . . any such statement contradicts the terms of the loan documents and any reliance thereon is unjustified." This argument is not well taken for two reasons. First, the loan documents are not before the Court, and in the context of a 12(b)(6) motion, this Court cannot indulge in assumptions, particularly ones favoring the Defendant, regarding what is or is not contained therein. Second, Defendant relies on <u>Ballard v. Commercial Bank of DeKalb</u>, 991 So. 2d 1201 (Miss. 2008), and <u>Rankin v. Brokman</u>, 502 So. 2d 644 (Miss. 1987), for the proposition that "Mississippi law is clear that an oral representation that contradicts the written terms of a contract is not actionable as fraud or misrepresentation, because reliance on such representation is not reasonable." However, both cases cited by the Defendants involve claims that a plaintiff was fraudulently induced into entering a contract by oral representations which contradicted its written terms. Under Mississippi law, "a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." <u>Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.</u>, 584 So. 2d 1254, 1257 (Miss. 1991).

Here, Plaintiffs sought to modify the existing terms of their loan. In that context, and in the context of a 12(b)(6) motion, the Court cannot say that it was categorically unreasonable for the Plaintiffs to have relied on representations made by the Defendant.

2. Promise of Future Conduct

Defendants next assert that any claims based on a representation that Plaintiffs would not be

10

penalized for making payments in the amount specified by GMAC is not actionable because any such assurance on the part of GMAC would be a promise of future conduct. See Holland v. Peoples Bank & Trust Co., 3 So. 3d 94, 99-100 (Miss. 2008) (negligent or fraudulent misrepresentation action cannot be maintained on a promise of future conduct "except, in some cases when a contractual promise is made with the present undisclosed intention of not performing it."). However, viewing the pleadings in the light most favorable to the Plaintiffs, the Plaintiffs' allegations could be fairly construed as an allegation that GMAC misrepresented the nature and terms of the modification process, which could constitute a representation of existing fact. See Crowley v. Adams & Edens, P.A., 731 F. Supp. 2d 628, 637 (S.D. Miss. 2010) (promise that "if [borrower] became three months delinquent, 'she would be placed in a loss mitigation program which would prevent foreclosure'" could be fairly construed as charging that Defendant misrepresented the nature and terms of loss mitigation program).

The Court finds that Plaintiffs have at least alleged a plausible claim for negligent misrepresentation. Therefore, Defendant's motion to dismiss is denied as to this claim.

**CONCLUSION**

Under the liberal pleading standards allowed by the Federal Rules of Civil Procedure, the Court finds that Plaintiffs have carried their burden under Rule 12(b)(6) as to their negligence and negligent misrepresentation claims. However, Plaintiffs have failed to plead their claim for intentional misrepresentation with particularity as required by Rule 9(b) and therefore, such claim is hereby dismissed without prejudice.

SO ORDERED on this, the 11th day of July, 2011.

                                        /s/ Sharion Aycock  
                                        **UNITED STATES DISTRICT JUDGE**